**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 20-42 |
| | ) | ELECTRONICALLY FILED |
| v. | ) | |
| | ) | |
| MATTHEW SWANSON, | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM**

AND NOW, comes the Defendant, Matthew Swanson, by and through his counsel,

Stephen E. Sebald, Esq., and submits this Sentencing Memorandum in support of a sentence of

four years, and ten years of supervised release with conditions. This sentence reflects the nature

and circumstances of Mr. Swanson's offense and his history and characteristics, and is

"sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18

U.S.C. § 3553(a)(2).

    **I.**    **Nature and Circumstances of Mr. Swanson's Offense and Background**

This case stems from the arrest of Defendant for his possession of child pornography,

resulting in charges under 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). Specifically, on February

12, 2020, law enforcement was contacted regarding the uploading of 19 images of suspected

child sexual abuse. These files were eventually traced to Defendant. Law enforcement sought

and were granted a search warrant of the Defendant's house which was executed on  August 14,

2020, at which time Defendant made incriminating statements to the FBI agents. They also found

the targeted images on his cell phone.  On September 30, 2020 he was charged with one count

of possession of child pornography. On February 25, 2021 Defendant waived prosecution by indictment and pled guilty following a hearing.

Mr. Swanson was born on August 31, 1990 and is currently 30 years old.  Following his graduation from Corry Area High School in  2009, Mr. Swanson received an Associate's Degree in 2017 from Erie Institute of Technology. This led him to successful employment in the technology sector. However, he resigned his position on February 5, 2021,  prior to his entering a guilty plea.

He has no criminal history. Mr. Swanson is deeply ashamed and remorseful for his actions. Further, he has acknowledged personal responsibility for his offending behavior, no longer engages in that behavior, has improved his understanding of how pornography negatively impacts victims, and made progress in erecting social supports and relapse prevention strategies.

Defendant has no depression or other mental health issues. Almost exclusively he used legally-obtained pornography with adult subjects but his curiosity got the best of him and following "suggested" search terms led him to a previously unknown corner of the web with photos that turned out to be illegal. While he takes responsibility for his misconduct, he also asserts that if he would have understood how dangerous these searches could be, he never would have utilized search queries to look for pornography different than the adult, legal images he had previously accessed.

All evidence demonstrates that he has not tried to minimize his conduct vis-à-vis law enforcement. Rather, he has been fully cooperative with law enforcement at every stage of this incident and has wholly complied with all conditions and limitations placed on him thus far by the judicial system.

Defendant is adamant that this will never happen again. He is committed to ensuring that he never access child pornography or any sort of illegal images ever again.

## II.       Requested Sentence

The Probation Office  has submitted a Pres-sentence Investigation Report setting out the suggested guideline figures for Mr. Swanson, recommending a sentence of four years, as part of the plea deal which the parties have reached.

As explained in the Probation Office's report, the base offense level for his offense, per U.S.S.G. 2G2.2(a)(1), is 18 levels, with that figure to be increased by two levels per U.S.S.G. 2G2.2(b)(2) as the images depicted pre-pubescent minors under the age of 12. Pursuant to U.S.S.G. 2G2.2(b)(4)(A), applicable where there are sadistic or masochistic images, four levels are added. Under U.S.S.G. 2G2.2(b)(6); two levels are added for use of his cell phone to access the material. Further, under U.S.S.G. 2G2.2(b)(7)(B), since the offense involved more than 150 but fewer than 300 images, three levels are added. (This results from the Guideline's classification of a video as being comprised of 75 images, for purposes of counting the number of images involved). This totals 29. The Government has agreed to a three-level reduction for acceptance of responsibility, per U.S.S.G. 3E1.1. Thus, the resultant offense level is 26. Because Mr. Swanson has no criminal history, this figure correlates with a guideline imprisonment range of 63 to 78 months.

Nonetheless, the parties have agreed to and the Probation Office has recommended a term of imprisonment of four years followed by ten years of supervised release. Further, he has agreed to pay mandatory restitution as required by the Victim Witness Protection Act and to make full restitution to all minor victims of his offense who come forward prior to his sentencing. He has also agreed to forfeit the I-Phone that was used in his offense.

III.     Legal Framework

A.  The Sentencing Commission's Report to Congress

Defendant urges this Court to sentence him to the four years agreed to by the parties, which period admittedly is below the Sentencing Guideline range. He contends that a perusal of the history of sentencing for child pornography justifies the requested sentence in this case.

"There is widespread agreement among judges, lawyers and legal scholars that the guidelines for child pornography offenses are seriously flawed." United States v. Childs, 976 F.Supp.2d 981, 982 (S.D. Ohio 2013). In fact, in February 2013, the Sentencing Commission released a report to Congress on the child pornography guidelines for non-production offenders. See U.S. Sentencing Commission, Report to the Congress: Federal Child Pornography Offenses (2012) (hereinafter "Child Pornography Report"). The Commission explained that it compiled the report in large part due to the increasing rate of below-guideline sentences for offenders sentenced under USSG § 2G2.2, pursuant to its statutory duty to "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," id. at ii, and because "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." Id. at ii, 323. The Commission explained that because the enhancements for computer use and type and volume of images "now apply to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability." Id. at iii, xi; id. at 209, 323. It explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely

circulated." Id. at 6. Because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," id. at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," id. at 323.

### B. Current Evidence Refutes Congress's Reasons for Increasing Penalties.

Mr. Swanson's sentence is based, in part, on application of § 2G2.2. Congress directed the Commission to take several actions relevant to Mr. Swanson's guideline calculation: (1) increase the base offense level from 10 to 13 in 1991; (2) increase the base offense level from 13 to 15 in 1995; and (3) add the 2-level enhancement for use of a computer. Congress did not make formal findings in support of any of these actions, but its reasons can be gleaned from the legislative history. This history suggests that Congress acted on three primary beliefs: (1) child pornography possessors are pedophiles who use pornography to sexually abuse children; (2) increasing penalties for possessors will dry up the market and thereby prevent the sexual abuse of children by removing the market incentive for those who abuse children for the purpose of producing new images; and (3) severe penalties will deter others from possessing child pornography. Each belief is based on assumptions that current empirical evidence refutes.

When it directed the Commission in 1991 to increase the base offense level from 10 to 13, Congress acted on the belief that those who possess child pornography are actually predatory child molesters who use pornography to desensitize, lure, entice, or coerce children to be sexually abused. See, e.g., 137 Cong. Rec. S10323 (July 18, 1991).  However, Mr. Swanson has not been convicted of sexually abusing a child, has not in fact sexually abused a child, and is at no risk of harming a child. This distinguishes Mr. Swanson from the offenders Congress had in

mind. Nor is there any evidence that the nature or number of images possessed bear on the likelihood that an offender is a child molester.

Further, in initially criminalizing the possession of child pornography, Congress acted on the view that those "who possess and view" child pornography represents the "market" for the production of child pornography, and that punishing child pornography possessors will dry up the market and thereby reduce demand for the abuse of children in order to produce child pornography. 136 Cong. Rec. S4730 (Apr. 20, 1990).  But Congress was mistaken. The production, trading, and viewing of child pornography takes place in a global market that cannot be significantly impacted by severe penalties in the United States. Many countries do not have laws aimed at child pornography, and of those that do, many do not criminalize the possession of child pornography. John Carr, Commonwealth Internet Governance Forum, A Joint Report on Online Child Protection Combatting Child Pornography on the Internet 19 (2010). As a result, there is a large, international legal market for child pornography that exists whether Mr. Swanson is incarcerated for one day or ten years. There is no social science research to support the theory that criminal punishment affects the child pornography markets since the advent of the Internet and file sharing programs. Child Pornography Report at 98.  Significantly, here, Mr. Swanson did not use his computer to trade or knowingly disseminate images, or to make images accessible to children.  Again, he is not the offender Congress had in mind.

Several courts have found that there is no evidence "remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet." United States v. Stern, 590 F. Supp. 2d 945, 952 n.5 (N.D. Ohio 2008) ("The Court is … forced to note the somewhat limited impact of domestic prosecution for a fundamentally international crime. . . . [N]o court should be deluded into believing that limiting domestic consumption alone can

eradicate the international market for child pornography."); <u>Kelly</u>, 2012 WL 236 7084, at *5.

They recognize that possessing even large numbers of images does not affect the market. <u>United

States v. Raby</u>, 2009 WL 5173964, at *6-7 (S.D. W. Va. Dec. 30, 2009) ("The worldwide market

for child pornography is so vast that the relative market impact of [] having even additional

images is miniscule.").

Congress has also relied on the view that severe penalties will deter others from

possessing child pornography. But to the extent that Congress believed that increasing penalties

will deter others from possessing child pornography, it was mistaken. Empirical research is

unanimous that more severe sentences do not decrease the likelihood that others will commit

crimes. See, e.g., Freiburger & Iannacchione, An Examination of the Effect of Imprisonment on

Recidivism, 24 Crim. Just. Stud. 369, 377 (2011) ("The results indicate that incarceration did not

affect either offenders' likelihood of recidivating or the severity of recidivism."). In sum, each of

Congress's actions rested on unfounded assumptions.

C. **Enhancements That Apply In Nearly Every Case Do Not Serve Their Purpose.**

Defendant contends that the four-year agreed-to sentence is appropriate, even given the

fact that the Guidelines suggest a higher sentence, particularly given the fact that the inclusion of

a two-level increase, per U.S.S.G. 2G2.2(b)(6), is unreasonable, given the ubiquity of the internet

in the dissemination of pornography. Specifically, his base offense level has been increased by

two levels per U.S.S.G. 2G2.2(b)(6), which provides:

> If the offense involved the use of a computer or an interactive computer service for the
> possession, transmission, receipt, or distribution of the material, or for accessing with
> intent to view the material, increase by **2** levels.

Certainly, at one time, the pornography trade was conducted through seedy store fronts or via mail, as images were reproduced on paper. But now, the primary means of distribution is through the internet. Hence, a two-level increase for computer/phone accessing of child pornography is likely given to almost all of those who are found to be in illegal possession of this type of contraband.

In 2018, 96.6% of the 1482 offenders sentenced under § 2G2.2 received this enhancement. https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2018/Use_of_SOC_Guideline_Based.pdf (last accessed June 20, 2021). This percentage shows that this crime is so associated with use of a computer or computer like device, that this factor is essentially part of the crime itself.  In other words, this characteristic describes conduct that is "essentially inherent to the crime itself," not an aggravating factor describing a more serious offense or higher risk of harm. Kelly, 868 F. Supp. 2d at 1208-09.

As one court has recognized, enhancements that apply in "almost every case" are contrary to the purpose of enhancements, which "are meant to increase a sentence for conduct more aggravated than the typical type of offense." Robinson, 669 F.3d at 778 (discussing the enhancement for "use of a computer"). Such enhancements render § 2G2.2 an "anomaly." Id. The Sentencing Commission confirms that "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," so that the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," id. at 323.

In child pornography cases, increases in offense levels are relevant and proper when the crime is furthered, increased, or truly enhanced by that specific conduct. But if almost all child

pornography cases involve the use of a computer or smart phone, then this conduct is not supportive of an enhancement, but is, in most cases, intertwined with the crime itself. The simple use of a computer in these circumstances would not be worthy of the computer enhancement. If, on the other hand, an individual was specifically using a computer to further his crime—such as disseminating self-produced content or using high-end computer software to encrypt, mask, steal, trade, sell, or barter child pornography, then a computer-triggered enhancement would be warranted. Herein, no evidence indicates that Defendant was compulsively or obsessively or repeatedly searching for photos of very young girls, that he was using his computer/phone to create or share or store illegal photos, or that the possession of the single illegal photo or use of electronic devices took him outside of the heartland of the child pornography offense. In other words, no evidence supports application of these two enhancements to his sentencing rubric.

D.  **Need for Just Punishment in Light of the Seriousness of the Offense, 18 U.S.C. §
    3553(a)(2)(A)**

Congress's actions with respect to the child pornography guideline have stemmed in large part from the belief that those who view child pornography are actually child molesters. Under this view, punishing child pornography possessors serves as a proxy for punishing child sexual abusers. Aside from the lack of evidence to support this belief in general, see Child Pornography Report at 104 (confirming that "not all child pornography offenders are pedophiles or engage in other sex offending") Mr. Swanson has not been convicted of sexually abusing a child, has not in fact sexually abused a child, and is at no risk of harming a child. This distinguishes Mr. Swanson from the offenders Congress had in mind, and is therefore highly relevant to this Court's determination of the appropriate sentence.

Another primary justification for severely punishing child pornography possessors is that they support the market for child pornography and thus encourage the abuse of more children in order to create new images. See 136 Cong. Rec. S4730 (Apr. 20, 1990). Aside from the evidence that disproves this belief in general, Mr. Swanson did not pay for or trade any images. Under these circumstances, where no economic or other incentive was given to anyone to create or post more or newer images, there was "no market effect" from Mr. Swanson's actions.

In addition, technology has changed the nature of this offense. In the past, child pornography had to be obtained in a risky and secretive manner for substantial sums of money, whereas today, images of child pornography are available for free in the privacy of one's home, with no planning and minimal effort. As a result, less dangerous people commit this offense than was previously the case, even though the guideline range is much higher than it was previously. The Internet, by rendering child pornography immediately and anonymously accessible, has "facilitate[d]. . . a new kind of crime" that in most cases would not otherwise have been committed. See Andreas Frei et al., Pedophilia on the Internet—A Study of 33 Convicted Offenders in the Canton of Lucerne, 135 Swiss Med. Weekly 488, 492 (2005). In short, the change in technology is relevant, in part, because it means that even as the population of child pornography offenders has become less dangerous, punishment has greatly increased.

In determining an appropriate sentence, this Court must consider the sentences available by statute. See 18 U.S.C. § 3553(a)(3). Congress set the statutory range of imprisonment for Mr. Swanson's offense at zero to ten years, and authorized a term of supervised relese. See 18 U.S.C. § 2252(b)(2); 18 U.S.C. § 3561(a); 18 USC § 3559(a). Specifically, 18 U.S.C. § 2252(b)(2) provides:

> Whoever violates, . . . paragraph (4) of subsection (a) shall be fined under this title or imprisoned not more than 10 years, or both, but if any visual depiction involved in

the offense involved a prepubescent minor or a minor who had not attained 12 years of age, such person shall be fined under this title and imprisoned for not more than 20 years.

As many courts have observed, the child pornography guideline, by enhancing sentences based upon factors that are inherent in the crime and thus appear in nearly every case, concentrates offenders at or near the statutory maximum and thus fails to meaningfully distinguish more serious offenders from less serious offenders. As one court observed, sentences at or near the statutory maximum should be reserved for the "worst possible variation of the crime" committed by the most dangerous offender. See United States v. Aleo, 681 F.3d 290, 302 (6th Cir. 2012).

Mr. Swanson's conduct and characteristics could not be farther from these. He has never improperly touched a child, he did not share files, he admitted what he had done, and he has fully accepted responsibility for his offense. No evidence indicates he presents any risk of ever harming a child. Mr. Swanson is the offender for whom the minimum statutorily authorized punishment is reserved.

### E.  Propriety of requested sentence

This Court is required to consider "the kinds of sentences available" by statute. 18 U.S.C. § 3553(a)(3). Congress has provided for a range of sentences, from a up to 10 years' imprisonment. See 18 U.S.C. §§ 2252(a)(4)(B), (b)(2), 3583(k). "Congress thus not only envisioned, but accepted, the possibility that some defendants found guilty of that subsection of the statute would receive no jail time at all." United States v. Husein, 478 F.3d 318, 332 (6th Cir. 2007) (upholding sentence of one day in prison followed by three years' supervised release where statutory range for drug trafficking was 0-20 years).  Courts have noted the comparatively lower culpability of defendants convicted of possessing child pornography (as opposed to distribution, production and actual sexual abuse). With respect to defendants convicted only of

possession offenses, a number of courts have imposed sentences with minimal or no incarceration. See, e.g., <u>D.M.</u>, 942 F.Supp.2d at 352; <u>United States v. Autery</u>, 555 F.3d 864, 867 (9th Cir.2009) (affirming non-Guidelines sentence of five years of probation and no period of incarceration for possession of child pornography); <u>United States v. Stall</u>, 581 F.3d 276, 277-78 (6th Cir.2009) (affirming non-Guidelines sentence of one day of incarceration followed by ten-year period of supervised release); <u>United States v. Prisel</u>, 316 Fed. Appx. 377, 378 (6th Cir.2008) (affirming non-Guidelines sentence of one day in prison followed by eighteen months of home confinement for possession of child pornography).  Accordingly, Defendant's requested sentence is in keeping with the sentences handed down by other courts for the same offense with similar offender characteristics.

**Conclusion**

Mr. Swanson is educated, has a bright future in his employment -- if he is not incarcerated for an inordinate period. In short, Mr. Swanson's education, employability and remorse strongly support the conclusion that he is most unlikely to re-offend. While a small minority of defendants convicted of possessing child pornography may again view child pornography and an even smaller minority may molest children, Mr. Swanson is not one of them. The sentence should reflect the fact that Congress's contrary assumption is unfounded in this case. All of the evidence indicates that Mr. Swanson will never view child pornography again. The four years recommended by the Probation Office along with supervised release and computer monitoring and other appropriate conditions are more than sufficient to ensure that he never does.

Respectfully submitted,

/s/ Stephen E. Sebald
Attorney for Defendant